IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>vs.<br><br>JD PALATINE LLC,<br><br>        Defendant. | CASE NO.: 2:22-cv-0008<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff John Doe ("Plaintiff"), by and through his undersigned counsel, brings the following Complaint against JD Palatine LLC ("Defendant" or "JD Palatine") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that falsely reported a misdemeanor arrest that Plaintiff had expunged over 16 years prior to Defendant's publication of the false report to Plaintiff's employer.

## INTRODUCTION

1. This is an individual action for damages, costs and attorneys' fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's employer that Plaintiff was arrested and charged with a misdemeanor in August 2001 ("the arrest record"). This reporting was grossly

1

inaccurate. Public record from the Illinois State Police, Bureau of Identification confirms that a Court Order and Expungement Petition was entered into the public record on September 15, 2004, over 16 years prior to Defendant's publication of the false report. Thus, it was unlawful for Defendant to publish the arrest record to Plaintiff's potential employer, as it no longer existed in the public record as of its expungement on September 15, 2004. In fact, a search of the public court records using Plaintiff's name confirms that no records exist.

4. Defendant's inaccurate report could have been easily remedied had Defendant consulted widely available public court records prior to issuing Plaintiff's background check report ("employment report") to his employer, records which confirm that no records exist in Plaintiff's name.

5. Defendant does not follow reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ and follow reasonable procedures resulted in Plaintiff's employment report being grossly inaccurate.

6. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

7. Defendant's inaccurate reporting cost Plaintiff his candidacy for an employment position as Principal of a high school in Houston, Texas, causing him to suffer a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money disputing and trying to correct his employment report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

8. As a result of Defendant's conduct, Plaintiff brings claims for Defendant's failure to use reasonable procedures to assure the maximum possible accuracy of the information it reported in Plaintiff's employment report, in violation of 15 U.S.C. § 1681e(b) of the FCRA.

## THE PARTIES

9. Plaintiff John Doe ("Plaintiff") is an individual person residing in Houston, Texas and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

10. Defendant JD Palatine LLC ("Defendant" or "JDP") is a Pennsylvania corporation doing business throughout the United States, including in the State of Pennsylvania and in this District, and has a principal place of business located at 10675 Perry Highway, #607, Wexford, PA 15090.

11. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action, such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

12. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant "resides" in this District.

## STATUTORY BACKGROUND

15. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or for credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

16. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to assure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

17. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" when assembling and preparing consumer reports. 15 U.S.C. § 1681e(b).

18. Consumer reports that contain factually incorrect criminal record information are neither maximally accurate nor fair to the consumers who are subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

19. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting; it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

20. The FCRA provides a number of protections for job applicants who are subjected to background checks.

21. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like JDP, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

22. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## FACTS

**Plaintiff Applies for a Job with Spring Branch Independent School District**

23. Plaintiff has had a 20-year career in public education and has previously been employed as a teacher, Assistant Principal, and Principal.

24. In or about early 2020, Plaintiff had applied to enter the Principal pool with Spring Branch Independent School District, located in the greater Houston, Texas area ("Spring Branch"), and was granted entry at that time but did not receive a job offer following the interview process.

25. Prior to being granted entry into the Spring Branch Principal pool in early 2020, Plaintiff was subject to multiple criminal background checks, which he passed with no issue as no criminal history was reported in his name.

26. In or about March 2021, Plaintiff was encouraged to reapply and submitted an application to once again be entered into the Principal pool with Spring Branch.

27. An entry into the Principal pool meant Plaintiff would be considered for a Principal position within the Spring Branch School District.

28. As part of the application process, Plaintiff authorized Spring Branch to order a background check. Upon successful completion of the background screening process, Plaintiff

would be interviewed by members of the Spring Branch administration and faculty for the open Principal position.

29. Plaintiff was particularly excited about the job opportunity at Spring Branch given his love for public education, administration, and over 20-year career working as a teacher, Assistant Principal, and Principal.

**Defendant Publishes an Inaccurate Background Check to Plaintiff's Prospective Employer**

30. Spring Branch contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

31. On or about May 18, 2021, Spring Branch ordered a criminal background check on Plaintiff from Defendant.

32. Shortly thereafter, in accordance with its standard procedures, Defendant completed Plaintiff's employment report.

33. Defendant's employment report on Plaintiff contained a grossly inaccurate and stigmatizing misdemeanor arrest record and charge for unlawful damage to a vehicle.

34. Defendant's reporting was false, and it was unlawful for Defendant to report the aforementioned misdemeanor arrest record and charge in Plaintiff's employment report.

35. Any member of the public who took a five-minute cursory review of the widely available public court records regarding Plaintiff could confirm the flaw in Defendant's employment report. It is indisputable that prior to supplying the employment report about Plaintiff to Spring Branch, Defendant failed to consult current public court records in Cook County, Illinois, which confirm 1) that Plaintiff has no reportable criminal history, and 2) that the aforementioned arrest record and charge was expunged pursuant to a Court Order and Expungement Petition, pursuant to 20 ILCS 2630/5 of the Illinois Criminal Identification Act.

36. The sole reason the misdemeanor arrest record and charge was reported as belonging to Plaintiff was that Defendant failed to use reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's employment report.

**Defendant's Illegal Business Practices**

37. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records. As a result of the increasing availability of this data, there has been a boom in the background check industry.

38. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

39. The criminal background check industry takes in revenues of $3 billion a year and is growing.[2]

40. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

41. Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

42. Defendant is well aware of the FCRA and has been sued dozens of times for reporting inaccurate or outdated information.

43. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over its reports prior to them being provided to Defendant's customers.

44. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate, expunged, sealed, or out-of-date entries it receives from its data vendor(s).

45. Defendant charges its customers the same price for reports that are inaccurate as it does for reports that are accurate.

46. Appropriate quality control review of Plaintiff's employment report would have made clear that Defendant was reporting an arrest record that had been expunged over 16 years earlier.

### Spring Branch Denies Plaintiff's Job Application as a Direct Result of Defendant's Inaccurate Employment Report

47. On May 20, 2021, Plaintiff received an email from Stephanie Brown, the Executive Secretary of the Spring Branch Independent School District Human Resources & Finance Department, stating that Plaintiff was disqualified from consideration for the Principal pool and position based on the criminal record contained in his employment report.

48. Shocked, humiliated, and confused upon hearing this information (as Plaintiff had previously passed multiple background checks conducted by Spring Branch), Plaintiff immediately contacted Defendant to request a copy of his employment report.

49.     In or about early June 2021, Defendant sent Plaintiff email correspondence containing a link to a copy of his employment report.

**Plaintiff Disputes the Misinformation in Defendant's Employment Report**

50.     Shortly after receiving Defendant's employment report and viewing the inaccurate information himself, Plaintiff searched for the expungement paperwork he received back in September of 2004, which was in storage.

51.     On June 29, 2021, after locating his expungement paperwork, Plaintiff sent email correspondence to Defendant disputing the inaccurate misdemeanor arrest record and charge contained in his employment report.

52.     On July 2, 2021, Plaintiff received email correspondence from Defendant confirming that it had reinvestigated his dispute and removed the misdemeanor arrest record and charge from the employment report. An updated copy of the employment report confirmed the status of the "National Criminal Database Alias Search" section of Plaintiff's corrected employment report indicated: "No Reportable Records Found."

53.     By the time Defendant completed its reinvestigation and corrected Plaintiff's employment report, Spring Branch was no longer interested in considering Plaintiff for the Principal pool or position.

54.     But for Defendant's false employment report, Plaintiff would have entered the Principal pool and been considered for the Principal position with the Spring Branch School District.

55.     Defendant does not have reasonable procedures in place to assure maximum possible accuracy because it would not make as much money if it implemented such procedures. Despite knowing that its procedures are unreasonable and do not assure the maximum possible

accuracy required by the FCRA, Defendant persists in utilizing procedures in reckless or knowing disregard for the rights of consumers, causing the very type of damages suffered by Plaintiff.

56. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

57. As a result of Defendant's conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Defendant's erroneous employment report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

58. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-57, above.

59. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

60. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

61. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

62. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the assembly and preparation of Plaintiff's employment report, and the files it published and maintains.

63. As a result of Defendant's conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money disputing and trying to correct Defendant's erroneous employment report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

64. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

65. In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

66. Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

67. Plaintiff demands a trial by jury.

Dated: January 3, 2022

**BERGER MONTAGUE PC**

_____
Shanon J. Carson, PA 85957
1818 Market St, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4656
Fax: (612) 584-4470
Email: scarson@bm.net

Hans W. Lodge, MN Bar No. 397012*
Kaylynn A. Johnson, MN Bar No. 0401486*
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
hlodge@bm.net
kjohnson@bm.net
*Pro Hac Vice Forthcoming*

*ATTORNEYS FOR PLAINTIFF*